IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROY JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 14−cv−1095−MJR−SCW |
| | ) |
| ZURICH AMERICAN INS. CO. and | ) |
| TRIPLE CROWN SERVICES CO. | ) |
| | ) |
| Defendants. | |

## ORDER

**WILLIAMS, Magistrate Judge:**

On January 26th this Court held a discovery dispute hearing regarding Triple Crown's objection, on the basis of attorney client privilege, to the production of certain documents in its possession, as well as those in the possession of its insurance broker, Hylant. The documents included two emails between in house counsel for Triple Crown and Hylant, as well as a power point presentation jointly prepared by counsel for Triple Crown and Hylant for presentation to Triple Crown's management. Prior to the hearing the Court conducted and *in camera* review of all of the documents at issue. At the hearing the Court overruled the objections in part and ordered the production of a power point presentation with redactions of attorney-client privileged material. The following summarizes the Court's rulings which were made on the record at the hearing:

The dispute centers on communications between Hylant and Triple Crown leading up to a decision by Triple Crown to convert from workers compensation policies for Triple Crown's drivers to occupational accident policies. The conversion occurred in April of 2008. Triple Crown maintained before the conversion, and maintains to this day, that its drivers are independent contractors. The drivers' status as employees or independent contractors is the primary bone of contention in this lawsuit. The occupational accident (occ/acc) policy arrangement that was

1

ultimately adopted by Triple Crown in 2008 required Triple Crown drivers to purchase an occ/acc policy in lieu of workers compensation insurance. Although they were not required to, the occ/acc policy purchased by the majority of the drivers was the one suggested by Triple Crown and provided by codefendant Zurich. This arrangement was facilitated by Triple Crown's broker, Hylant. Plaintiff argues that the documents in question cannot be attorney client privileged, because the communications involved policies that were ultimately purchased by Triple Crown's drivers, not Triple Crown. Triple Crown, on the other hand, maintains that Hylant was acting as its agent – and specifically as the agent for its in house counsel, Jerry Burns.

## I. Waiver Based on Defense of Advice of Counsel

The Court first took up the issue of Plaintiff's assertion that Triple Crown signaled that it intends to put forward a defense it was relying in good faith on the advice of counsel and/or Hylant. If that were the case then the Court would likely agree that Triple Crown would have to waive its claim of attorney client privilege for the communications at issue. But at the hearing, counsel for Triple Crown unequivocally stated on the record that it would not rely on such a defense. Given that representation the Court determined it need not further consider Plaintiff's arguments on this point.

## II. Was Hylant an Agent of Triple Crown's Counsel

The dispositive question was whether the broker, Hylant an agent of Triple Crown – and specifically Triple Crown's counsel - for the purpose of providing legal advice. The Court agreed with Plaintiff's counsel that policies in question were ultimately purchased by Triple Crown drivers, who were the insured. Thus there could be no argument that the privilege attached due to an insured/insurer arrangement. Nevertheless the Court concluded that Hylant was Triple Crown's agent, and agent for Triple Crown's counsel Burns. The parties agreed as to the legal requirements for an agency relationship under Indiana: 1) consent by the principle: 2) acceptance of authority by

the agent, 3) exertion of control by the principle. *Bunger v. Demming,* 40 N.E.3d 887, 893 (Ind. Ct. App. 2015). The Court determined that Hylant was acting at the behest of Triple Crown for the purpose of providing advice on the conversion from a workers compensation to an occ/acc model. As Triple Crown's broker Hylant provided advice to Triple Crown but ultimate decision making was in the hands of Triple Crown. Additionally, while not dispositive of the issue, evidence that Hylant was paid a retainer as an agent for Triple Crown, supports the conclusion that there was an agency relationship.

Plaintiff also challenged whether the communications at issue were intended to be confidential. Having reviewed the communications in camera, the court determined that they were.

Having determined that Hylant was acting as an agent for Burns, the Court turned to the question of whether the communications were for the purpose of rendering legal advice, or some other purpose. *See Hayworth v. Schilli Leasing,* 669 N.E.2d 165, 169, n. 8 (Ind.1996); *see also In Re Grand Jury Proceedings,* 220 F.3d 568, 571 (7th Cir. 2000); *BPI Energy v. IEC (Montgomery), LLC,* Civil No. 07-186-DRH, 2008 WL 4450301 (S.D. Ill. Sept. 30, 2008). Based on its *in camera* review, the Court determined that the communications, to the extent privileged, are not covered by the crime fraud exception. *See United States v. BDO Seidman, LLP,* 492 F.3d 806, 818 (7th Cir. 2007). The Court found that the communications do not evidence a fraud, or conspiracy to commit a fraud. The fact the communications may be about an issue that ultimately inures to the benefit of a client and the detriment of some other party does not, on its own, evidence a fraud, even if the advice later turns out to be wrong.

Ultimately the Court concluded that the email communications were made for the purpose of giving or obtaining legal advice. The power point, on the other hand, contains a mixture of legal advice/analysis and business advice concerning the pros and cons of converting to an occ/acc insurance model:

3

The first page of the power point is not privileged. Page two has bullet points; the first one should be redacted, but the remainder should be produced. Pages 3-4 should be redacted in their entirety. On page 5 the third bullet point should be redacted, but the remainder of the page is business advice. The handouts referenced on page 5 should be produced in their entirety (Handouts A-B). On the 6th page,[1] lines 3-6 should be redacted, but the remainder of that page is business advice. On page 7, lines 4 and 9-12 should be redacted as legal advice. On page 8, lines 1-6, and 8-13 are business advice; lines 7, 14-15 are legal advice and should be redacted. On Page 9, lines 1-6 are business advice; lines 7-8 are legal advice and must be redacted. As to page 10, the second bullet point should be redacted as legal advice. Handout C should also be withheld as legal advice. Page 11 is entirely business advice, to include the attachments that are referenced. Page 12 references a handout, which is legal advice and shall be redacted and not produced. On page 13, the Court concludes that the first three bullet points should be redacted as legal advice, but not the last bullet point. **Documents to be produced in 14 days, or on or before February 9, 2016. Objections will likewise be due February 9, 2016.**

**IT IS SO ORDERED**

**Date:** January 28, 2016                                      */s/ Stephen C. Williams*
                                                                                   **Stephen C. Williams**
                                                                                   United States Magistrate Judge

---

[1] The Court counts a heading and subheading as lines 1-2